## CAMPBELL vs. WARDEN and others.

GUARANTY: *What will discharge guarantors.*

C. agreed to furnish X. with $5,000 worth of lumber to stock his lumber yards, and to supply all lumber ordered by X. from time to time, so long as the indebtedness of X. to him for lumber so supplied should not exceed $5,000; and to sell the lumber to X. at the regular market price in a certain city at the time of each sale; and X. agreed to purchase of C. all the lumber required to stock said yards, and to pay for the same as soon as it should be sold and the purchase money collected, etc.; and defendants guarantied the performance of this contract on X.'s part. In an action upon this guaranty, for the balance alleged to be due plaintiff for lumber furnished to X. under said contract, the referee for trial reported that, in the bills rendered by plaintiff to X. for such lumber, there were certain overcharges, or items in which more than the market price at the city named was charged for lumber. *Held*, that such overcharges did not affect the liability of X., or vary the contract, and did not discharge the defendants as guarantors.

APPEAL from the Circuit Court for *Dodge* County.

In April, 1874, plaintiff and one B. W. Warden entered into an agreement under seal, by which said Warden agreed to purchase of plaintiff all lumber, laths, shingles, doors, sash, and

blinds necessary to stock his two lumber yards at Minnesota Junction and Horicon, respectively, and to use due diligence in selling the same and collecting the proceeds, and to pay plaintiff as soon as such collections should be made, and in any event to pay within one year from date of shipment. Plaintiff on his part agreed to furnish said Warden from time to time, on receipt of his orders, with all the lumber, etc., which the latter should need to keep up his stock in said yards to the amount of $5,000; and also agreed to sell the same to Warden "at the regular market price in the city of Oshkosh at the time of sale." The defendants, *Job A.*, *James R.* and *John C. Warden*, executed a written guaranty of B. W. Warden's performance of said contract.

This action was on the contract of guaranty, and the complaint alleged a balance of $1,587.77, with interest, due from B. W. Warden by the terms of his contract, which he had neglected and refused to pay; and that plaintiff had duly performed, etc. The defense set up by the answer was, that plaintiff had failed to perform the conditions of the contract on his part.

The referee to whom the cause was sent for trial, reported, in substance, that plaintiff had furnished B. W. Warden, pursuant to their agreement, up to July 9, 1875, lumber, etc., amounting, *at the price charged* said Warden, to $5,847.42, of which $3,899.65 had been paid, leaving due plaintiff, *at the price charged*, $1,587.77; and that plaintiff had fully performed all his covenants except as in such report afterwards stated. The report then states, in substance, that in eleven bills of lumber sold by plaintiff to B. W. Warden at various dates from May 2, 1874, to July 10, 1875, there were specified overcharges, amounting in the aggregate to $38.81, leaving as the actual balance due plaintiff, $1,548.96, with interest from the commencement of the action. As conclusion of law, the referee reported that plaintiff was entitled to recover from defendants in this action the sum last named.

The report was confirmed, against defendants' exceptions; and, from a judgment pursuant thereto, defendants appealed.

Carhart and another vs. Harshaw.

The cause was submitted on the brief of *E. C. Lewis* for the appellants, and that of *G. W. Burnell* for the respondent.

RYAN, C. J.    The only substantial ground urged for the appellants to reverse the judgment in this case, is that the respondent undertook to charge the principal of the appellants, in some few instances, more than the contract rate; and that this worked a change in the contract which discharged the appellants from their liability as sureties.

The contract fixed the rate, and the quantity was matter of fact.  Under the contract, no formal account need have been kept.  And it was immaterial to the contract between the principals, and immaterial to the sureties, whether the respondent's account was justly and accurately kept or not.    If he made overcharges, he certainly did wrong.  But he only undertook to increase his demand, not to change the ground of his demand.    And his overcharges did not affect the liability of the principal of the appellants, or vary the contract. They were matters *dehors* the contract, and without influence in any way upon it.

The referee did not find that the respondent had broken his contract by the overcharges.  If he had so found, this court would have overruled the finding.

*By the Court.*—The judgment of the court below is affirmed.